Yongmoon Kim, Esq.
Email: ykim@kimlf.com
Philip D. Stern, Esq.
Email: pstern@kimlf.com
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HILDA NUAMAH-WILLIAMS, *individually and on behalf of those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>FRONTLINE ASSET STRATEGIES, LLC; and JOHN DOES 1 to 10,<br><br>Defendants. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff Hilda Nuamah-Williams, individually and on behalf of those similarly situated, by way of this Class Action Complaint against Defendants Frontline Asset Strategies, LLC and John Does 1 to 10, state:

**NATURE OF THE CASE**

1. This action arises from Frontline who, as a debt collector subject to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, unlawfully and routinely communicated consumers' private financial information to third parties.

2. The consumer rights established by the FDCPA sought to eliminate abusive debt collection practices while protecting debt collectors who do not employ such practices from being competitively disadvantaged.

3. Congress adopted the FDCPA because it found, among other things, that debts could be collected without certain practices which contribute to invasions of individual privacy. 15 U.S.C. § 1692(a) and (c).

4. Thus, the FDCPA protects consumers' privacy by broadly prohibiting debt collectors from communicating with others in connection with the collection of a debt. 15 U.S.C. § 1692c(b).

5. The FDCPA sets forth a narrow list of circumstances when, and individuals with whom, a debt collector may disclose information. Thus, absent the consumer's consent or court authorization, a debt collector may only communicate with the consumer, the consumer's spouse, the consumer's attorney, the debt collector's attorney, the creditor, the creditor's attorney, and a credit bureau.

6. Addressing just the disclosure of a debt's account number to unauthorized third parties, the Third Circuit explained:

> The disclosure of [the consumer's] account number raises these privacy concerns. The account number is a core piece of information pertaining to [the consumer's] status as a debtor and Convergent's debt collection effort. Disclosed to the public, it could be used to expose her financial predicament. Because Convergent's disclosure implicates core privacy concerns, it cannot be deemed benign.

*Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014).

7. The FDCPA's protection of consumer's private financial information is more critical today when information is stored electronically on servers designed to be remotely accessible and, therefore, is capable of being "hacked." The more the information is disseminated and rests on multiple servers, the more likely it is that the information may fall in the wrong hands.

8. The National Consumer Law Center explained:

As the world has gone digital, consumers' records, both financial and otherwise, are increasingly vulnerable to exposure. Transactions that were once fleeting, recorded only on paper and filed in some cabinet, or perhaps reduced to microfiche, are now but mouse-clicks away from duplication and dissemination.

Unregulated databases, escalating numbers of mergers, and the proliferation of information brokers—private investigators who specialize in obtaining computerized records—all threaten privacy. As was noted in Congress, "databases of personal identifiable information are increasingly prime targets of hackers, identity thieves, rogue employees, and other criminals, including organized and sophisticated criminal operations."

The internet raises particular privacy concerns, as information sent over the World Wide Web may pass through dozens of different computer systems, each of which can snatch and hold the information in its coffers. In addition, website owners can track consumers' online behavior and gather information about their preferences, often without their knowledge. Web bugs, or tiny graphics that are put into web pages and e-mails, can monitor who views the information. Clickstream data can tell website owners which pages of the site were viewed and for how long. "Cookies" dropped onto a computer may not identify the user by name but do identify the particular computer, which allows an interested party to assemble a great deal of information about that computer's user.

Financial information is especially sensitive, able to reveal not just a consumer's standard of living and debt load, but also personal preferences and lifestyle details ranging from books bought to prescriptions purchased. In *California Bankers Ass'n v. Shultz*, Justice Powell pointed out that "[f]inancial transactions can reveal much about a person's activities, associations, and beliefs." Justice Douglas elaborated further:

A checking account . . . [m]ay well record a citizen's activities, opinion, and beliefs as fully as transcripts of his telephone conversations . . . In a sense a person is defined by the checks he writes. By examining them the agents get to know his doctors, lawyers, creditors, political allies, social connections, religious affiliation, educational interests, the papers and magazines he reads, and so on ad infinitum.

> The same can be said of credit card charges, debit purchases, and online transactions. Forty years later, the details of these revealing consumer activities are easily collected, compiled, analyzed, and accessed, and thus have created a lucrative market for their trade. One industry leader among data aggregation companies, Acxiom, advertises that it has data on 2.5 billion consumers. Acxiom claims that one of its products covering American consumers has data on 250 million consumers, offering data not just on individual demographics, but also household characteristics, financial information, life events, major purchases, and behavior, all of which allows for targeted marketing. Experian reports that it manages data on more than 300 million consumers and 126 million households, while Equifax claims a database of over 115 million U.S. households distributed over 150 different segment groups, which can be used to predict behavior. In 2017, Equifax suffered a data breach that involved the personal data on nearly half the United States population being stolen, a breach that a Congressional committee found to have been "entirely preventable." In 2014, the Federal Trade Commission filed a complaint against another data broker that allegedly bought the payday loan applications of consumers and then sold the information to marketers with no legitimate need for it, leading some scammers among them to debit millions from the consumers' accounts.

National Consumer Law Center, Fair Credit Reporting (9th ed. 2017) § 18.1, *updated at* www.nclc.org/library (footnotes omitted and alterations in original).

9. The FDCPA imposes strict liability when a debt collector fails to comply with its provisions. 15 U.S.C. § 1692k(a). The Act also endorses the use of class actions when, as here, the Plaintiff's claims are the same as those of other consumers.

10. A debt collector's routine disclosure of the consumer's private financial information also constitutes unfair practices proscribed by the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.*, and the tortious invasion of consumers' privacy.

11. Thus, Plaintiff brings this class action for damages against Defendant arising from Defendant's unlawful disclosure of sensitive and confidential personal identifying and financial information, when attempting to collect debt from New Jersey consumers.

## JURISDICTION AND VENUE

12. This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's claims arising under federal law, 28 U.S.C. § 1367 with respect to Plaintiff's claims arising under state law, and 28 U.S.C. §§ 2201–2202 with respect to declaratory relief.

13. Venue is proper in this District because Defendant regularly conducts business in this District.

## PARTIES

14. Plaintiff Hilda Nuamah-Williams is a natural person residing in Essex County, New Jersey.

15. Defendant Frontline Asset Strategies, LLC is a collection agency with an office located at 2700 Snelling Avenue North, Suite 250, Roseville, Minnesota 55113.

16. Defendants John Does 1 to 10 are fictitious names of natural persons and/or business entities whose true names are presently unknown to Plaintiff. Plaintiff will substitute the true names of these Defendants as their identities will be disclosed in discovery.

## FACTUAL ALLEGATIONS

17. Frontline regularly collects or attempts to collect defaulted debts owed to others.

18. Frontline's primary purpose is the collection of debts.

19. Frontline attempts to collect debts alleged to be owed by natural persons.

20. Frontline uses the mails, telephone, the internet and other instruments of interstate commerce in engaging in the business of collecting defaulted debt or alleged debt of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

21. By letter dated May 21, 2020 ("5/21/2020 Letter") addressed to Plaintiff,

Frontline attempted to collect a debt ("Debt") alleged to be owed to LVNV Funding, LLC.

22. Although the 5/21/2020 Letter includes Frontline's address in Minnesota, the return address is in California.

23. By letter dated August 17, 2020 ("8/17/2020 Letter") addressed to Plaintiff, Frontline attempted to collect the Debt.

24. Although the 8/17/2020 Letter includes Frontline's address in Minnesota, the return address is in California.

25. A true but partially redacted copy of the 5/21/2020 Letter and the 8/17/2020 Letter are attached as Exhibit A.

26. On information and belief, LVNV acquired rights to the Debt after the Debt was deemed to be past due and in default.

27. The Debt is alleged to arise from a personal loan made to Plaintiff by LVNV's predecessor and not for any business purpose.

28. After acquiring rights to the Debt but before August 17, 2020, LVNV placed the Debt with Frontline for collection.

29. As with all debts placed with Frontline, when the Debt was placed with Frontline, Frontline owed a duty to Plaintiff to not communicate information about Plaintiff and the Debt to anyone except for Frontline's communications with Plaintiff, Plaintiff's spouse, Plaintiff's attorney, LVNV, LVNV's attorney, and Frontline's own attorney without Plaintiff's consent, a court order, or as necessary to effectuate a post-judgment remedy.

30. In breach of that duty, Frontline communicated information about Plaintiff and the Debt to one or more third parties to save money when mailing collection letters.

31. To collect debts, including the collection of the Debt from Plaintiff, Frontline uses

the mail.

32. On information and belief, Frontline's process for creating collection letters includes merging debt-specific data with a template or form letter. Such information includes the use of a return address in its collection letters other than an address where Frontline regulates conducts business.

33. On information and belief, the merging process involves the designation of a Frontline form letter containing placeholders which are replaced with debt-specific data.

34. On information and belief, when Frontline decides to mail collection letters, it identifies multiple debts on which to mail letters using a particular form letter such that the same form letter is used to create batches of collection letters at one time.

35. Unlike many other debt collectors, Frontline decided to avoid the expense of preparing and mailing its own collection letters. Instead, Frontline decided it would be less costly to use a third party (commonly known as a mail vendor) by providing the mail vendor with Frontline's form letters and, thereafter, communicating the data about each debt to the mail vendor who merged, printed, and mailed Frontline's collection letters.

36. As compared with the expense to produce and mail its own collection letters, Frontline decided that using a third-party mail vendor was less expensive thereby giving it a competitive advantage over debt collectors who produced and mailed their own letters in-house.

37. On information and belief, the 8/17/2020 Letter was created and mailed to Plaintiff through Frontline's use of a mail vendor.

38. Plaintiff never consented to Frontline communicating such information with any third party.

39. No court authorized Frontline to communicate such information to any third

party.

40. Frontline's communication of such information was not necessary to effectuate a post-judgment remedy.

41. Frontline's mail vendor is not Plaintiff, Plaintiff's attorney, a consumer reporting agency, the Debt's creditor, or that creditor's attorney.

42. By using a mail vendor, Frontline disclosed Nuamah-Williams's personal identifying information and private information about her Debt to the third party mail vendor without Nuamah-Williams's prior consent.

43. Frontline used the same procedures it used in sending the Frontline Letters to Plaintiff when sending the same and/or similar letters to numerous other New Jersey consumers.

44. It is Frontline's policy and practice to communicate and convey private and sensitive information about consumers with third parties by using third party mail vendors to send written collection communications in attempts to collect consumer debt.

45. Frontline used the same procedures they employed in sending the collection letters to Plaintiff when sending the same and/or similar letters to other New Jersey consumers from whom Defendant sought to collect a debt.

46. Frontline's policies, practices, and procedures involving the communication of private and confidential information about Plaintiff and other New Jersey consumers invades their privacy.

47. Defendants John Does 1 to 10 reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of Frontline that are the subject of this Complaint. Those Defendants personally control the illegal acts, policies, and

practices utilized by Frontline and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

48. Some or all of John Does 1-10 set the policies and practices complained of herein.

49. Some or all of John Does 1-10 were actively engaged in the practices complained of herein.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 4:32 of the New Jersey Rules of Court.

51. Subject to discovery and further investigation which may require Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks certification of a class initially defined as follows:

> **Class**: All natural persons to whom a collection letter from Frontline Asset Strategies, LLC was mailed on or after August 14, 2015 using a mail vendor or containing a return address in Concord, California
>
> **Subclass**: All members of the Class to whom the collection letter is dated on or after August 14, 2020.

52. Plaintiff seeks to recover statutory damages, actual damages, and attorney's fees and costs on behalf of herself and all class members under the claims asserted herein.

53. The Class and Subclass for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

54. There are questions of law and fact common to the members of the Class and Subclass that predominate over questions affecting only individuals.

55. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. A class action will cause an orderly and expeditious administration of the claims of the Class and Subclass and will

foster economies of time, effort and expense by avoiding thousands of individual suits that will be based on the same legal theories that can be resolved in a single proceeding.

56. Plaintiff's claim is typical of the claims of the members of the Class and Subclass. She is a member of the Class and Subclass.

57. The questions of law and/or fact common to the members of the Class and Subclass predominate over any questions affecting only individual members.

58. Plaintiff does not have interests antagonistic to those of the Class and Subclass.

59. The Class and Subclass, of which Plaintiff is a member, are readily identifiable. The Defendant has records of each account.

60. Plaintiff will fairly and adequately protect the interests of the Class and Subclass, and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

61. The prosecution of separate actions by individual members of the Class and Subclass would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendant in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

62. Plaintiff does not anticipate any difficulty in the management of this litigation.

## FIRST COUNT

### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF FOR THE CLASS

63. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

64. The FDCPA sets, as a national policy, the standards with respect to the duties each debt collector owes each natural person in the collection of consumer debts.

65. Such duties include Frontline's protection of each consumer's private and confidential information from disclosure to anyone except as expressly provided by law.

66. Frontline's practices and policies which regularly involve its breach of such duties constitute unfair and unconscionable commercial practices and otherwise violate the Consumer Fraud Act ("CFA") at N.J.S.A. 56:8-2.

67. Plaintiff suffered ascertainable loss from Defendant's CFA violations.

68. Under the CFA, Plaintiff is authorized to obtain injunctive and other equitable relief individually and on behalf of the Class.

69. Under 28 U.S.C. §§ 2201–2201 and N.J.S.A. 2A:16-53, declaratory relief is available to Plaintiff and the Class.

70. Defendants, their agents, and others acting in concert with them should be enjoined from continuing Frontline's policies and practices that result in the invasion of consumer's privacy by disclosing information about debts to third party mail vendors.

**WHEREFORE**, as to the First Count One, Plaintiff, individually and on behalf the Class, demands judgment against Defendants, jointly and severally,

 a. Granting class certification;

 b. Declaring that Defendant violated the CFA;

 c. Declaring that Defendant violated the FDCPA;

 d. Permanently enjoining Defendants from the disclosure of consumer's information to a

   third party mail vendor;

   e. Awarding Plaintiff's counsel reasonable attorneys' fees and costs; and

   f. For such other and further relief as the Court deems equitable and just.

## SECOND COUNT

### DAMAGES UNDER THE CONSUMER FRAUD ACT ON BEHALF OF THE CLASS

71. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

72. Each Defendant is a "person" within the meaning of the CFA at N.J.S.A. 56:8-1.

73. Plaintiff and those similarly situated obtained "merchandise" within the meaning of the CFA at N.J.S.A. 56:8-1.

74. Defendant engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in connection with the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

75. Defendant engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in the subsequent performance of the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

76. Defendant committed unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA at N.J.S.A. 56:8-2.

77. As a result of Defendant's unlawful actions, Plaintiff and the Class members suffered ascertainable loss from Defendant's CFA violations, entitling them to treble damages under the CFA, at N.J.S.A. 56:8-19.

**WHEREFORE**, as to Count Two, Plaintiff, individually and on behalf the Class, demands Judgment against Defendants, jointly and severally:

   a. Granting class certification;

  b. Awarding treble damages under the CFA, at N.J.S.A. 56:8-19;

  c. Awarding Plaintiff's counsel reasonable attorneys' fees and costs under the CFA, at N.J.S.A. 56:8-19;

  d. For pre-judgment and post-judgment interest; and

  e. For such other and further relief as the Court deems equitable and just.

**THIRD COUNT**

**NEGLIGENCE**

78. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

79. Defendant owed the Plaintiff a duty to maintain the confidentiality of their private and financial information. The FDCPA, at 15 U.S.C. § 1692c(b), is either evidence of the duty or the breach of it is negligence *per se.*

80. The disclosure of the confidential and protected information of the Plaintiff and the Class damaged them by exposing their private information to persons who lacked any right or entitlement to know their private information.

81. The Plaintiff and others have suffered a compensable loss arising from the disclosure of their protected private and financial information.

82. The Class has likewise suffered a compensable loss arising from the disclosure of their protected private and financial information.

**WHEREFORE**, as to Count Three, Plaintiff, individually and on behalf of the Class, demands Judgment against Defendants, jointly and severally:

  a. Granting class certification;

  b. A money judgment for compensatory damages based on the Defendant's disclosure of the Plaintiff and Class' private information including, but not limited to, nominal damages;

    c.   For attorney's fees, litigation expenses and costs in connection with this action;

    d.   For pre-judgment and post-judgment interest; and

    e.   For such other and further relief as the Court deems equitable and just.

## FOURTH COUNT

### INVASION OF PRIVACY

83.    Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

84.    Defendants intentionally invaded the privacy of Plaintiff and each member of the Class by unreasonable publication of private facts.

85.    These private facts, including Plaintiff's financial information, are private matters, the dissemination of such facts would be offensive to a reasonable person and there is no legitimate interest of the public in being apprised of the facts publicized.

86.    Defendants' conduct breached the standard for confidentiality of such information as established by 28 U.S.C. § 1692c(b).

87.    By publishing the private financial information of the Plaintiff and the Class, Defendant damaged them by exposing their private information to persons who lacked any right or entitlement to know their private financial information.

88.    Defendants' disclosure of such private facts was with actual malice because they disclosed such facts intentionally and in disregard for the privacy of the Plaintiff and the members of the Class to save money and gain a competitive advantage over debt collectors who, unlike Defendants, refused to secure the cost-savings associated with the disclosure of such private information incident to using third party mail vendors to create, print, and mail collection letters.

89.    The Plaintiff and others have suffered a compensable loss arising from the invasion of their privacy.

90. The Class has likewise suffered a compensable loss arising from the invasion of their privacy.

**WHEREFORE**, as to Count Four, Plaintiff, individually and on behalf of the Class members, demands Judgment against Defendants, jointly and severally,

a. Granting class certification;

b. A money judgment for compensatory damages based on the Defendant's invasion of the privacy of the Plaintiff and Class;

c. A money judgment for punitive damages;

d. For attorney's fees, litigation expenses and costs in connection with this action;

e. For pre-judgment and post-judgment interest; and

f. For such other and further relief as the Court deems equitable and just.

## COUNT FIVE

### FAIR DEBT COLLECTION PRACTICES ACT FOR THE FDCPA SUBCLASS

91. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

92. Each Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

93. The Debt is a "debt" within the meaning of 15 U.S.C. §1692a(5).

94. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

95. The 5/21/2020 Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

96. The 8/17/2020 Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

97. Defendant sent the Frontline Letters in an attempt to collect a "debt" within the meaning of 15 U.S.C. §1692a(5).

98. Defendants' disclosure of information to a third party mail vendor is a "communication" as defined by 15 U.S.C. § 1692a(2) and the communication was "in connection with the collection of any debt" within the meaning of 15 U.S.C. § 1692c(b).

99. Defendants violated one or more provisions of the FDCPA. Such provisions include but are not limited to §§ 1692c, 1692d, and 1692f.

**WHEREFORE**, as to Count Five, Plaintiff, individually and on behalf of the Class members, demands Judgment against Defendants, jointly and severally,

a. Granting class certification;

b. Awarding statutory damages to Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

c. Awarding statutory damages to the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

d. Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(B)(3); and

e. For pre-judgment and post-judgment interest; and

f. For such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial by jury.

### CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding except that *some* of the claims assert in this Complaint against Frontline have been asserted against LVNV Funding, LLC by way of a Class Action Counterclaim filed in the Superior Court of New Jersey in an action entitled *LVNV Funding, LLC v. Hilda Nuamah* and designated by Docket No. ESX-L-001972-21. The claims asserted in that Counterclaim arise from the disclosure of information to a third party mail vendor in connection with Frontline's collection letters sent to a New Jersey address on or after

May 13, 2020 to collect a debt allegedly owed to LVNV Funding, LLC. LVNV has contended that the claims against it are subject to an arbitration agreement prohibiting class claims but LVNV has yet to move to compel arbitration.

Dated: August 16, 2021                        KIM LAW FIRM LLC

                                              <u>s/Yongmoon Kim</u>
                                              Yongmoon Kim, Esq.

                                              *Attorneys for Plaintiff*