UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HILDA NUAMAH-WILLIAMS, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRONTLINE ASSET STRATEGIES, LLC and JOHN DOES 1 to 10,<br><br>Defendants. | Civ. No. 2:21-cv-15440 (WJM)<br><br>OPINION |

In this putative class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq.*, Defendant Frontline Asset Strategies, LLC ("Defendant" or "Frontline") moves to dismiss Plaintiff Hilda Nuamah-Williams' ("Plaintiff") Complaint or alternatively, to dismiss Plaintiff's state law claims pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 10. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Defendant's motion to dismiss for failure to state a claim is **denied in part and granted in part.**

**I.   Background**

Frontline, a collection agency, notified Plaintiff by letter dated May 21, 2020 ("May Letter"), that it would be collecting on the debt ("Debt") she allegedly owed LVNV Funding, LLC ("LVNV"). Compl., ¶¶ 15, 21, ECF No. 1. Frontline sent Plaintiff another letter dated August 17, 2020 ("August Letter") in an attempt to collect the Debt. *Id.* at ¶ 23; *see* May and August Letters attached as Ex. A to Compl., ECF No. 1-1.

On March 11, 2021, LVNV instituted suit against Plaintiff in New Jersey state court to collect on the Debt ("State Court Action"). *See* State Court Action complaint ("State Court Complaint"), Ex. A to Peter G. Siachos Declaration ("Siachos Decl."), ECF No. 10-3. In response, Plaintiff filed a putative class action counterclaim asserting that LVNV violated the FDCPA, 15 U.S.C. §§ 1692c(b), 1692d, and 1692e, by causing Frontline to mail her the May Letter, which contained her mailing address, account number, and total amount due. State Court Compl., ¶¶ 13-14, 43. Plaintiff further alleged that a third-party mail vendor printed and mailed the May Letter. *Id.* at ¶ 20. On September 13, 2021, LVNV and Plaintiff filed a Joint Stipulation of Dismissal of all claims as to all parties in the State Court Action. Siachos Decl., Ex. C, ECF No. 10-5.

1

On August 16, 2021, about a month before dismissal of the State Court Action, Plaintiff initiated this federal action against Frontline for disclosing, without her consent, her "personal identifying and private information" to a third-party (commonly known as a "mail vendor") for purposes of preparing and mailing the August Letter. Compl., ¶¶ 35, 37, 42. Plaintiff claims that Frontline provided the mail vendor debt-specific data to merge with a template or form letter to create and mail its debt collection letters. *Id.* at ¶¶ 32-38. In a five-count Complaint, Plaintiff alleges negligence *per se* or breach of duty to maintain the confidentiality of private and financial information in violation of the FDCPA, 15 U.S.C. §§ 1692c(b) (Count Three); invasion of privacy by unreasonable and malicious publication of private facts in breach of the FDCPA, 15 U.S.C. § 1692c(b) (Count Four); and violations of the FDCPA including 15 U.S.C. §§ 1692c, 1692d, and 1692f (Count Five). Plaintiff also seeks monetary damages under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 ("CFA"), (Count Two) as well as declaratory relief under 28 U.S.C. §§ 2201 and N.J.S.A. § 2A:16-53 for violations of the CFA and the FDCPA (Count One).

Frontline now moves to dismiss Plaintiff's entire Complaint on the grounds that is barred by the Entire Controversy Doctrine or alternatively, to dismiss Counts One through Four for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Discussion

### A. Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). That is, although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

2

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Tellabs, Inc. v. Makar Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "'[A] court may take judicial notice of the record from a previous court proceeding between the parties.'" *Keyes v. Nationstar Mortg., LLC*, No. No. 20-02649, 2020 WL 6111036, at *5 (D.N.J. Oct. 16, 2020), *reconsideration denied*, 2021 WL 2651946 (D.N.J. June 28, 2021) (citing *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008)).

### B. Entire Controversy Doctrine

The Entire Controversy Doctrine is an equitable principle that "embodies the notion that 'the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.'" *Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (citing *DiTrolio v. Antiles*, 142 N.J. 253, 267 (1995) (internal quotations and citation omitted)). Application of the doctrine "is left to judicial discretion based on the factual circumstances of individual cases." *Oliver v. Ambrose*, 152 N.J. 383, 395 (1998). "[A] court must consider whether the party against whom the doctrine is sought to be invoked has had a fair and reasonable opportunity to litigate that claim." *Hobart Bros. Co. v. Nat.'l Union Fire Ins. Co.*, 354 N.J. Super. 229, 241 (App. Div. 2002). Conversely, the court must also weigh "'the possibility that a party has purposely withheld claims from an earlier suit for strategic reasons or to obtain 'two bites at the apple.'" *Id.* (citing *Hillsborough Twp. Bd. of Educ. v. Faridy Thorne Frayta*, 321 N.J. Super. 275, 284 (App. Div.1999).

Frontline argues that dismissal of the entire Complaint is warranted because under the Entire Controversy Doctrine, Plaintiff should have asserted all claims that stem from the same set of facts in a single litigation, even those against different parties. However, although the present suit involves the same controversy, which Plaintiff disputes,[1] Plaintiff is correct that the Entire Controversy Doctrine no longer requires mandatory joinder of parties. *Hobart Bros. Co. v. Nat.'l Union Fire Ins. Co.*, 354 N.J. Super. 229, 242 (App. Div. 2002). As an exception, however, a court may dismiss a successive suit against a party that was not joined in the prior suit in "special situations involving both

---

[1] Plaintiff posits that the present suit concerns the August Letter in contrast to the State Court counterclaim which related to the May Letter, and therefore, does not involve the same controversy. Although the May and August Letters are separate letters, they nonetheless "'arise from related facts or the same transaction or series of transactions.'" *Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.*, 237 N.J. 91, 109 (2019) (citing *DiTrolio v. Antiles*, 142 N.J. 253, 267 (1995)).

3

inexcusable conduct . . . and substantial prejudice to the non-party resulting from omission from the first suit." *Id.* (citing Pressler, *Current N.J. Court Rules,* Comment 1 on R. 4:30A (2002), *certif. denied,* 175 N.J. 170 (2002)); *see* N.J. Ct. R. 4:5-1(b)(2).[2] In *Hobart*, the Appellate Division noted that "the factors of inexcusable conduct and substantial prejudice are, in a sense, inter-related," and recognized that "preclusion is a remedy of last resort." *Hobart,* 354 N.J. Super. at 818-19. Relevant factors identified in *Hobart* and appropriately modified to fit the present case include: (1) whether the failure to join Frontline was an attempt to thwart the assertion of a valid claim; (2) whether Plaintiff's settlement with LVNV without including Frontline was unreasonable under the circumstances; (3) whether Frontline should be charged with constructive knowledge of the State Court Action; (4) the extent to which judicial resources were employed in the State Court Action; and (5) whether Frontline might be unfairly hampered in its ability to mount a defense, e.g., due to loss of evidence, the running of an applicable period of limitations, or other prejudice. *Ctr. For Professional Advancement v. Mazzie,* 347 F. Supp. 2d 150, 156-57 (D.N.J. 2004). "In all instances, the party seeking application of the entire controversy doctrine bears the burden of demonstrating inexcusable conduct and substantial prejudice in view of the *Hobart Brothers* factors." *Ctr. For Professional Advancement v. Mazzie,* 347 F. Supp. 2d 150, 157 (D.N.J. 2004) (citing *Hobart,* 354 N.J. Super. at 242.)

In examining the *Hobart* factors, the Court notes that Plaintiff was aware of her claims against Frontline prior to dismissal of the State Court Action. *See* State Court Compl., ¶ 20.[3] Hence her decision not to join Frontline in the earlier action may suggest a deliberate strategy to pursue piecemeal litigation. However, Frontline has not argued that it did not have constructive knowledge of the prior action or that Plaintiff was attempting to thwart the assertion of a valid claim. Additionally, significant judicial resources would likely not have been expended in the six months that the State Action was pending. Moreover, despite the missed opportunity to join in LVNV's defense and the eventual settlement of the State Court Action, Frontline has not identified any harm to its ability to engage in settlement efforts in this matter. Nor has Frontline claimed that it would be unfairly hampered in its ability to mount a defense due to the running of any applicable period of limitations, any loss of witnesses, evidence, fading memories, or unavailability of information caused by any delay. *See Ctr. For Pro. Advancement v. Mazzie,* 347 F. Supp. 2d 150, 156 (D.N.J. 2004) ("a party's access to relevant information is largely dispositive of the substantial prejudice issue"). In sum, Frontline has not met its burden to

---

[2] R. 4:5-1(b)(2) states in part: "A successive action shall not, ... be dismissed for failure of compliance with this rule [requiring certification disclosing names of any non-party who should be joined in the action pursuant to R. 4:28] unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action."

[3] *See* Plaintiff's Local Civ. R. 11.2 Certification ("some of the claims assert[ed] in [the federal action] against Frontline have been asserted against LVNV [in the State Court Action] Class Action Counterclaim ..."); N.J. Ct. R. 4:5-1 (Plaintiff "may bring a court action against other parties for letters similar to the one described in the Counterclaim").

4

show inexcusable conduct or substantial prejudice. Thus, Defendant's motion to dismiss Plaintiff's entire suit under the Entire Controversy Doctrine is **denied**.

### C. CFA (Count Two)

To state a cause of action under the CFA,[4] the plaintiff must establish: "'1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *Pierre-Charles v. Consumer Portfolio Servs., Inc.*, No. 17-10025, 2018 WL 3425737, at *4 (D.N.J. July 16, 2018) (citing *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)). In opposing Frontline's motion, Plaintiff insists that ascertainable loss is only a standing requirement and that *"[o]nce this threshold standing requirement is satisfied,* the plaintiff can pursue "all available remedies, including an injunction, ... even if the plaintiff ultimately loses on his damage claim but does prove an unlawful practice under the Act." *Laufer v. U.S. Life Ins. Co. in City of New York*, 385 N.J. Super. 172, 186 (App. Div. 2006) (emphasis added). However, in this case, Plaintiff has failed to satisfy this threshold requirement to show ascertainable loss, which is an "essential element" to sustain a private cause of action under the CFA. *Weinberg v. Sprint Corp.*, 173 N.J. 233, 251 (N.J. 2002).

Plaintiff's Complaint contains only conclusory assertions of "ascertainable loss." *See* Compl., ¶¶ 67, 77. An "ascertainable loss" is one that is "quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005), "rather than one that is merely theoretical." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 558 (2009); *Pierre-Charles v. Consumer Portfolio Servs., Inc.*, No. 17-10025, 2018 WL 3425737, at *4 (D.N.J. July 16, 2018). Damages that courts have supported have been based on either an out-of-pocket theory, which applies "if the product received was essentially worthless" or a benefit of the bargain theory, which requires that "the consumer be misled into buying a product that is ultimately worth less than the product that was promised." *Pierre-Charles*, 2018 WL 3425737, at *4 (citing *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 374 (D.N.J. 2015)). Plaintiff has not plead any "quantifiable," or "definite, certain and measurable loss" resulting from the purported disclosure of information to the mail vendor. She claims no out-of-pocket loss, deprivation of the benefit of the bargain, or any factual allegations to support a reasonable inference that she suffered ascertainable loss. Because Plaintiff has not made a threshold showing of ascertainable loss, which is a prerequisite to maintain a viable cause of action under the CFA, the Court need not resolve the parties dispute as to whether a

---

[4] N.J.S.A. § 56:8-2 prohibits the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . ."

debt collector's activities are subject to the CFA.[5] Count Two cannot proceed as a matter of law. Frontline's motion to dismiss the CFA claim is **granted.**

### D. Declaratory and Injunctive Relief (Count One)

Plaintiff seeks declaratory and injunctive relief under 28 U.S.C.A. § 2201[6] and N.J.S.A. 2A:16-53[7] for violations of the CFA and FDCPA. However, the Third Circuit has held that "injunctive and declaratory relief are not available to litigants acting in an individual capacity under the FDCPA." *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004), *as amended* (Oct. 22, 2004), *and abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). In reaching that decision, the Circuit noted that "the different penalty structure [of the FDCPA] demonstrates Congress's intent to preclude equitable relief in private actions." *Id.* Thus, the Court declines to allow Plaintiff to circumvent Congress's intent to preclude such relief under the FDCPA by seeking equitable relief under 28 U.S.C. § 2201 instead. *See Brignola v. Home Properties, L.P.*, No. 10-3884, 2013 WL 1795336, at *14 (E.D. Pa. April 26, 2013) (dismissing request for declaratory judgment under 28 U.S.C. §§ 2201, *et seq.* for violations of FDCPA and corresponding state law).

Moreover, because Plaintiff has not stated a claim for relief under the CFA, she cannot succeed on her claims for declaratory and injunctive relief as to that claim. *See Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 480 (D.N.J. 2014) ("Declaratory relief is only available to the extent that the plaintiff has alleged facts sufficient to suggest the alleged wrongful conduct would result in future harm."); *see also Blakeney v. Marsico*, 340 Fed. Appx. 778, 780 (3rd Cir. 2009). Frontline's motion to dismiss Count One is **granted.**

---

[5] *Compare Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 847 (D.N.J. 2011) (finding "no basis for predicting that the New Jersey Supreme Court would hold that the legislature intended the [CFA] to reach the debt collection activities of a debt buyer of defaulted credit card debt"); *Gomez v. Forster & Garbus LLP*, No. 17-13708, 2019 WL 5418090, at *6 (D.N.J. Oct. 22, 2019) ("Nor is a debt buyer a 'seller' whose 'subsequent performance' falls within the ambit of the [CFA].") *with Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 577-78 (2011) ("collecting or enforcing a loan, whether by the lender or its assignee, constitutes the "subsequent performance" of a loan, an activity falling within the coverage of the CFA.").

[6] 28 U.S.C. § 2201(a) provides in part: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . *may* declare the rights and other legal relations of any interested party seeking such declaration . . .." (emphasis added). The decision to grant declaratory judgment is in the discretion of the district court. *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1170 (3d Cir. 1987). "A declaratory judgment is inappropriate solely to adjudicate past conduct," *Delaware State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008) (internal quotation marks and citation omitted), or to issue advice, *Zimmerman*, 834 F.2d at 1170. Rather, a declaratory judgment requires there to be a "live dispute" or "a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Id.* at 1170.

[7] N.J.S.A. § 2A:16-53 states in relevant part: "A person . . . whose rights, status or other legal relations are affected by a statute . . ., may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

6

### E. Negligence (Count Three)

Plaintiff contends that the FDCPA is evidence of Frontline's "duty to maintain the confidentiality of [her and other putative class members'] private and financial information" and that breach of such duty is negligence *per se.* Compl., ¶ 79.

"A duty of care exists when an actor creates an unreasonable risk of foreseeable harm or when such a duty is judicially imposed by policy" and fairness considerations. *Nicholas v. Saul Stone & Co., LLC*, No. 97-860, 1998 WL 34111036, at *22 (D.N.J. June 30, 1998), *aff'd*, 224 F.3d 179 (3d Cir. 2000); *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439 (1993). To determine the existence of a duty, the court makes a "value judgment" that requires a 'weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.'" *Nicholas*, 1998 WL 34111036, at *22 (*citing Goldberg v. Housing Auth. of Newark*, 38 N.J. 578, 583 (1962)). Here, Plaintiff offers no policy or fairness considerations for the Court to impose a duty of care. Nor does Plaintiff cite any New Jersey caselaw or other authority that supports the position that such a exists between a debt collector and a debtor or consumer. Instead, Plaintiff points to inapposite cases involving negligence claims against a securities firm, physicians, or attorneys. *See Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 317 (2002) (noting New Jersey law imposes duty on physicians, attorneys, insurance brokers, manufacturers). Plaintiff's reliance on *In re Nickelodeon Consumer Privacy Litig.*, 827 F. 3d 262, 274 (3d Cir. 2016) is also misplaced because at issue in that case is not whether a debt collector owes a duty of care to a debtor, but rather, what constitutes an injury-in-fact to confer Article III standing to bring suit under the FDCPA.

Furthermore, Plaintiff has not plead any damages caused by the purported disclosure of information to a third-party. *See Robinson v. Vivirito*, 217 N.J. 199, 208 (2014) ("The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages.") Accordingly, Plaintiff fails to state a viable negligence claim. Frontline's motion to dismiss Count Three is **granted**.

### F. Invasion of Privacy (Count Four)

Invasion of privacy includes four distinct torts though "each represents an interference with the right of the plaintiff to be let alone." *See Gomez v. Forster & Garbus LLP*, No. 17-13708, 2019 WL 5418090, at *3 (D.N.J. Oct. 22, 2019). The particular tort at issue in this matter is the unreasonable publication of private facts, which requires a plaintiff to "show that the matters revealed were actually private, that dissemination of such facts would be offensive to a reasonable person, and that there is no legitimate interest of the public in being apprised of the facts publicized." *Bisbee v. John C. Conover Agency, Inc.*, 186 N.J. Super. 335, 340 (App. Div. 1982) (citing 3 Restatement, Torts 2d, § 562A at

376 (1977);[8] *Romaine v. Kallinger,* 109 N.J. 282, 292 (1988) (citing *Bisbee,* 186 N.J. Super. at 340); *Smith v. Datla,* 451 N.J. Super. 82, 96 (App. Div. 2017) (same). Additionally, "publicity" means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D, (1977), cmt. a.; *Castro,* 384 N.J. Super. at 610-611. "Communication 'to a single person or even to a small group of persons' does not amount to an invasion of privacy." *Scherer Design Grp., LLC,* 2018 WL 3574881, at *4 (citing *Castro,* 384 N.J. Super. at 611).[9]

Here, taking as true Plaintiff's contention that Frontline "communicat[ed] the data about each debt," including "personal identifying information," to a third-party mail vendor, Compl., ¶¶ 35, 42, the Court concludes that such sharing of Plaintiff's information to a mail vendor does not constitute "publicizing" as it was not communicated to the public at large nor is Plaintiff's private information substantially certain to become public knowledge. Moreover, Frontline's disclosure of the debt information to a mail vendor for purposes of mailing collection letters on its behalf is not of a kind that would be offensive to a reasonable person. Frontline's motion to dismiss Count Four is **granted.**

### III. Conclusion

For the reasons noted above, Defendant's 12(b)(6) motion to dismiss on the basis of the Entire Controversy Doctrine is **denied.** Defendant's motion to dismiss Counts One through Four is **granted.**

/s/ *William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

Date: March 28, 2022

---

[8] The Restatements on Torts, which has been adopted by New Jersey courts, currently states that liability for invasion of privacy arises where the publicized matter is of a kind that "would be *highly* offensive to a reasonable person." Restatement (Second) of Torts § 652D (1977) (emphasis added); *see Castro v. NYT Television,* 384 N.J. Super. 601, 610-11 (App. Div. 2006) (citing Restatement (Second) of Torts § 652D standard that invasion of public requires publicized matter to be "highly offensive" to reasonable person); *Capers v. FedEx Ground,* No. 02-5352, 2012 WL 2050247, at *5 (D.N.J. June 6, 2012); *Scherer Design Group, LLC v. Schwartz,* No. 18-3540, 2018 WL 3574881, at *3 (D.N.J. July 25, 2018).

[9] In *Smith,* 451 N.J. Super. 82, a case cited by Plaintiff, the defendant doctor made an unauthorized disclosure of the plaintiff's HIV-positive status in the presence of an unidentified third party during an emergent bedside consultation in plaintiff's private hospital room. The Appellate Division affirmed the lower court's decision to deny dismissal of the invasion of privacy by public disclosure holding that that tort was governed by a two-year statute of limitations. *Id.* at 105. Whether "publicity" means communication to a single person or to a group was not at issue in *Smith.*