UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HILDA NUAMAH-WILLIAMS, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRONTLINE ASSET STRATEGIES, LLC and JOHN DOES 1 to 10,<br><br>Defendants. | Civ. No. 2:21-cv-15440 (WJM)<br><br>OPINION |

In this putative class action, Plaintiff Hilda Nuamah-Williams ("Plaintiff") alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq.* Defendant Frontline Asset Strategies, LLC ("Defendant" or "Frontline") moves to dismiss Count Five pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c). ECF No. 33. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Defendant's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is **granted**. Defendant's Rule 12(c) motion for judgment on the pleadings is **denied as moot**.

I.   **Background**[1]

Frontline, a collection agency, notified Plaintiff by letter dated May 21, 2020 and again by letter dated August 17, 2020 ("August Letter"), that it sought collection on a debt ("Debt") she allegedly owed LVNV Funding, LLC ("LVNV"). Compl., ¶¶ 15, 21, 23, ECF No. 1; August Letter attached to Compl., Ex. A, ECF No. 1-1.

On August 16, 2021, Plaintiff filed a five-count Complaint against Frontline for disclosing, without her consent, her "personal identifying and private information" to a third-party (commonly known as a "mail vendor") for purposes of preparing and mailing the August Letter. Compl., ¶¶ 35, 37, 42. Plaintiff claims that Frontline provided the mail vendor debt-specific data to merge with a template or form letter to create and mail its debt collection letters. *Id.* at ¶¶ 32-38.

---

[1] The Court assumes familiarity with the facts of this case, which are also set forth in the Court's March 28, 2022 Opinion, ECF No. 17.

1

By Opinion and Order dated March 28, 2022, the Court granted Defendant's Rule 12(b)(6) motion to dismiss Counts One through Four, which sought declaratory judgment, injunctive relief, and alleged violations of the New Jersey Consumer Fraud Act, negligence, and invasion of privacy. ECF No. 17. The only remaining claim, Count Five, asserts violations of the FDCPA, including §§ 1692c, 1692d, and 1692f. Defendant now moves to dismiss Count Five for lack of Article III standing. Alternatively, Defendant argues that it is also barred by the statute of limitations and fails to state a claim.

## II.   DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle for challenging Article III standing, which is a component of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175 (3d Cir. 2000). Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Art. III § 2. The burden of establishing jurisdiction rests with the party invoking federal court jurisdiction. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016); *Animal Sci. Prod., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 470 (3d Cir. 2011). Plaintiff must "clearly ... allege facts demonstrating" all three elements of constitutional standing: (1) an "injury in fact," (2) that is "fairly traceable" to a defendant's conduct, and that (3) is likely to be redressed by favorable judicial intervention. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992).

To establish an "injury in fact," a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations omitted). Concrete injuries can be tangible or intangible. *See TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2204 (2021). To determine whether "an intangible harm constitutes injury in fact," the first inquiry is "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 340. Another consideration in examining whether harm is sufficiently concrete is the decision of Congress to elevate "'to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 578 U.S. at 341 (citing *Lujan*, 504 U.S. at 578). However, even in the context of a statutory violation, Article III standing requires a concrete injury. *Id.* at 341.

Here, the most analogous traditionally recognized harm is the tort of public disclosure of private facts, which Plaintiff posits is a *per se* concrete harm. However, in *TransUnion,* the Supreme Court did not hold that that was a *per se* harm but recognized that various intangible injuries such as "reputational harms, disclosure of private information, and intrusion upon seclusion," *can* be concrete if it bears a close relationship to a traditionally recognized harm. *TransUnion,* 141 S.Ct. at 2204. Hence the Court found that where class members sued for violations of the Fair Credit Reporting Act, only those members whose misleading credit reports were disseminated to third-parties suffered

2

concrete injury bearing a "close relationship" to the reputational harm traditionally regarded as a basis for a defamation suit, but that those whose credit files were not disclosed to third-parties lacked concrete harm. *Id.* at 2190.

Under New Jersey law, the tort of public disclosure of private facts is an "invasion of privacy by unreasonable publication of private facts [that] occurs when it is shown that the matters revealed were actually private, that dissemination of such facts would be offensive to a reasonable person, and that there is no legitimate interest of the public in being apprised of the facts publicized." *Romaine v. Kallinger*, 109 N.J. 282, 292 (1988) (internal quotations omitted). Publication means that "information is 'communicat[ed] to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge....'" *Foley v. Medicredit, Inc.*, No. 21-19764, 2022 WL 3020129, at *3 (D.N.J. July 29, 2022) (citing *Hamza v. United Cont'l Holdings, LLC*, No. 19-8971, 2021 WL 3206814, at *10 (D.N.J. July 29, 2021)). The "'invasion of privacy requires publicity in the broad, general sense of the word 'public.'" *Barclift v. Keystone Credit Servs., LLC*, 585 F. Supp. 3d 748, 758–59 (E.D. Pa. 2022) (citing *Tureen v. Equifax, Inc.*, 571 F.2d 411, 418 (8th Cir. 1978)).

Where identifying information has been disclosed to a mailing vendor as alleged here, courts have found that that is not publicity to the public at large and therefore the harm lacks a close relationship with a traditional common law tort to confer standing. *See e.g., Hunstein v. Preferred Collection and Management Servs., Inc.*, 48 F.4th 1236 (11th Cir. 2022) (finding plaintiff did not have standing since sending debt information to mail vendor was not publicity); *Rabinowitz v. Alltran Fin. LP*, No. 21-12756, 2022 WL 16362460, at *7 (D.N.J. Oct. 25, 2022) (agreeing with "vast majority of courts, both in this District and nationwide, [that] have concluded that the letter vendor theory is not, alone, sufficient to confer Article III standing."); *see also e.g., Jackson, v. I.C. System, Inc.*, No. 21-12342, 2023 WL 157517, at *3 (D.N.J. Jan. 11, 2023); *Foley v. Medicredit, Inc.*, No. 21-19764, 2022 WL 3020129, at *3 (D.N.J. July 29, 2022); *Madlinger v. Enhanced Recovery Co.*, LLC, No. CV 21-00154 (FLW), 2022 WL 2442430, at *7 (D.N.J. July 5, 2022) (collecting cases); *Rohl v. Pro. Fin. Co., Inc.*, No. 2117507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022); *Pagan v. Convergent Outsourcing, Inc.*, No. 21-12130, 2022 Lexis 71428, at *10 (D.N.J. Mar. 30, 2022); *Barclift*, 585 F. Supp. 3d 748; *Barclift v. Keystone Credit Servs., LLC*, No. 21-04335, 2022 WL 1102122 (April 13, 2022), *appeal pending*. Even if the mail vendor's employees read a debtor's personal information, "sharing personal information with 'a small group of persons is not publicity.'" *Barclift*, 585 F. Supp. 3d at 758 (citing *Ciccone v. Cavalry Portfolio Servs., LLC*, No. 21- 2428, 2021 WL 5591725, at *4 (E.D.N.Y. Nov. 29, 2021) (cleaned up)); *see TransUnion*, 141 S. Ct. at 2210 n.6 (noting courts have not "necessarily recognized disclosures to printing vendors as actionable publications."). The Court agrees with the decisions of other courts that "mail vendor" theories do not confer Article III standing to sue under the FDCPA.

None of the cases relied on by Plaintiff to support her position even discuss whether the dissemination of information to a third-party mailing vendor was publicity. Rather, at issue in those cases was: 1) whether publicity occurred when information was displayed on the face of an envelope or visible through the envelope's transparent window; and 2) whether the displayed information was indeed protected such that disclosure was prohibited by the FDCPA. *See e.g., Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (holding disclosure of debtor's account number through clear plastic envelope window violated FDCPA because information "could be used to expose [the debtor's] financial predicament"); *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 355, 357–58 (3d Cir. 2018) (reiterating that disclosing an account number on an envelope creates standing); *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 278, 280 (3d Cir. 2019) (finding quick reference (QR) code on face of envelope containing "internal reference number" was protected information that had been made "accessible to the public"); *Morales*, 859 Fed. Appx. 625 (3d Cir. 2021) (deciding envelope's barcode was disclosure of protected information and caused concrete injury).

Moreover, the fact of publicity was not in dispute in the supplemental authority submitted by Plaintiff. *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 159 (3d Cir. 2022) (finding Article III standing where data breach of former employer's server resulted in personal information being published to Dark Web "making it accessible to criminals worldwide."). Other cases from this district that Plaintiff cites also do not involve the publication of private facts as the analogous common law tort and whether sending private information to a third-party mailing vendor satisfies the publicity element. *See Ozturk v. Amsher Collection Servs.*, No. 21-18317, 2022 WL 1602192 (D.N.J. May 20, 2022) (finding standing to allege false and misleading debt collection letter), *Velez-Aguilar v. Sequium Asset Sols., LLC*, No. 21-14046, 2022 U.S. Dist. LEXIS 8842 (D.N.J. Jan. 18, 2022) (same), *Bordeaux v. LTD Fin. Servs., L.P.*, No. 16-0243, 2021 WL 4438127 (D.N.J. Sept. 28, 2021) (same).

In sum, Plaintiff has failed to establish that Frontline's disclosure of information to a mail vendor was publicity to the general public, which is an essential element of the traditionally recognized tort of publication of private facts. Apart from the bare procedural violation of the FDCPA, Plaintiff has not plead facts that show she suffered the "real harm of abusive, harassing, and deceptive debt collection practices" that the FDCPA is intended to address. *Barclift*, 585 F. Supp. 3d at 760. The FDCPA "is not meant to provide a cause of action for the imaginary harm proposed by the mailing vendor theory." *Id.* Defendant's motion to dismiss for lack of Article III standing is **granted.**

### III. CONCLUSION

For the reasons noted above, Defendant's Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is **granted**. Count Five, which is the only remaining

4

claim in Plaintiff's Complaint, is **dismissed without prejudice**. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020) ("Dismissal for lack of standing reflects a lack of jurisdiction, so dismissal of [] complaint should have been without prejudice."). Defendant's Rule 12(c) motion to dismiss for failure to state a claim is **denied as moot**.

　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　WILLIAM J. MARTINI, U.S.D.J.

Date: February 2, 2023